UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JEFFREY WALKER,

               Plaintiff,

        vs.

HIGHLANDS BANKSHARES, INC., ROBERT
W. MOSER, JR., E. CRAIG KENDRICK,
CHARLES D. MEADE, III, CHARLES P.
OLINGER, MICHAEL F. ROSINUS, E.
SUTTON BACON, JR., and JON C.
LUNDBERG,

               Defendants.

---------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Jeffrey Walker ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.  This action is brought by Plaintiff against Highlands Bankshares, Inc. ("Highlands" or the "Company") and the members of Highlands' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Highlands will be acquired by First Community Bankshares, Inc. ("First Community") (the "Proposed Transaction").

2.      On September 11, 2019, Highlands and First Community issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated September 11, 2019 (the "Merger Agreement") to sell Highlands to First Community.  Under the terms of the Merger Agreement, each Highlands stockholder will receive 0.2703 shares of First Community common stock for each share of Highlands common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $91 million based on the 20-day average closing price of First Community's common stock of $32.56 as of September 10, 2019.

3.      On November 4, 2019, defendants caused to be filed a proxy statement/prospectus on Form 424B3 (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Highlands stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the Proposed Transaction; (ii) Highlands management's and First Community's financial projections, relied upon by the Company's financial advisor Stephens Inc. ("Stephens") in its financial analyses; (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Stephens; and (iv) Stephens' and  Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Highlands' public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Highlands common stock trades on the OTCQX Marketplace, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Highlands.

9.      Defendant Highlands is a Virginia corporation, with its principal executive offices located at 340 W. Main Street, Abingdon, Virginia 24210.  The Company is a one-bank holding company and conducts the majority of its business operations through its wholly-owned bank subsidiary, Highlands Union Bank (the "Bank").  Highlands has 15 offices located in North Carolina, Eastern Tennessee, and Southwest Virginia.  Highlands' common stock trades on the OTCQX Marketplace under the ticker symbol "HLND."

10.      Defendant Robert W. Moser ("Moser") is Chairman of the Board and has been a director of the Company since 2017.

11.     Defendant E. Craig Kendrick ("Kendrick") has been a director of the Company since 2000.

12.     Defendant Charles D. Meade, III ("Meade") has been a director of the Company since 2017.

13.     Defendant Charles P. Olinger ("Olinger") has been a director of the Company since 1995.

14.     Defendant Michael F. Rosinus ("Rosinus") has been a director of the Company since 2019.

15.     Defendant E. Sutton Bacon, Jr. ("Bacon") has been a director of the Company since 2017.

16.     Defendant Jon C. Lundberg ("Lundberg") has been a director of the Company since 2015.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     First Community is a Virginia corporation, with its principal executive offices located at 29 College Drive, Bluefield, Virginia, 24605.  First Community is a financial holding company that provides banking products and services through its wholly owned subsidiary First Community Bank.  First Community Bank operated 44 branch banking locations in Virginia, West Virginia, North Carolina, and Tennessee as of June 30, 2019.  First Community Bank offers wealth management and investment advice through its Trust Division and First Community Wealth Management, which collectively managed and administered $1.05 billion in combined assets as of June 30, 2019.  First Community reported consolidated assets of $2.21 billion as of June 30, 2019.

First Community's common stock trades on the NASDAQ Global Select Market under the ticker symbol "FCBC."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.     Highlands provides a relationship-based and highly personal banking experience to small to mid-sized private businesses, professionals, and individuals.  The Company conducts the majority of its business operations through the Bank.

20.     The Bank provides banking, insurance, wealth management, and other financial solutions through 14 banking offices, a loan production office, and 148 full-time equivalent associates located in North Carolina, Tennessee, and Virginia.

21.     The Bank offers retail and commercial banking products and services to individuals, businesses and local government customers.  These products and services include traditional deposit and loan options, including checking accounts, money market deposit accounts, interest-bearing demand deposit accounts, savings accounts, time deposits, residential 1-4 family loans, owner occupied and non-owner occupied commercial real estate loans, second mortgage loans, home equity lines of credit, consumer, commercial/industrial, credit card and agricultural loans.  Other products and services offered include automatic funds transfer, night depository, safe deposit, and other miscellaneous services normally offered by commercial banks.

22.     Additionally, the Bank, through its wholly owned subsidiary Highlands Union Insurance Services, Inc. ("HUIS"), joined a consortium of approximately forty-seven other financial institutions to form Bankers' Insurance, LLC.  Bankers' Insurance, LLC, as of December 31, 2018, had purchased multiple full service insurance agencies across the state of Virginia.  HUIS sells insurance products and services through Bankers' Insurance, LLC.

23.     Moreover, Highlands Union Financial Services, Inc., a wholly-owned subsidiary of

the Bank, was created to offer third party mutual funds and other financial services to its customers in all market areas served by the Bank.  Russell Road Properties, LLC was created to hold and manage certain properties acquired by the Bank through foreclosure or deed in lieu of foreclosure.

24.     On August 12, 2019, Highlands issued a press release announcing its second quarter 2019 financial results, including consolidated net income for the six months ending June 30, 2019 of $1.6 million, compared to $1.5 million earned during the same period of 2018 and second quarter 2019 total revenue (net interest income plus noninterest income) of $6.0 million.  The Company further reported second quarter 2019 noninterest income of $933,000 compared to $890,000 in the first quarter of 2019 due to higher BOLI and cardholder interchange income. Bryan Booher, Highlands' Interim President and Chief Executive Officer ("CEO") commented on the quarter, stating "[o]ur sales efforts during the second quarter were successful, with the loan portfolio growing $9.4 million after two quarters of net shrinkage. Deposits have grown $15.6 million or 3.1 percent so far during 2019."

**The Process Leading to the Proposed Transaction**

25.     On January 24, 2019, the Board requested that Stephens run a process to determine the value at which Highlands could either sell or raise capital for the purpose of pursuing mergers and acquisitions and other strategic investments and potentially provide liquidity to certain investors.

26.     Thereafter, the Board engaged Stephens on April 4, 2019, and Stephens contacted potential business combination partners.  In total, 29 parties were contacted by Stephens, with 12 parties executing nondisclosure agreements.

27.     In early May 2019, five financial institutions submitted initial indications of interest, at implied prices that ranged from the low end of $7.53 per share of Highlands stock to the high end of $9.50 per share of Highlands stock.  First Community's initial indication of interest

proposed a 100% stock transaction with a value range of $8.00 to $9.00 per share of Highlands stock. A party identified in the Proxy Statement as "Institution A" submitted a bid with a value range of $8.50 to $9.50 per share of Highlands stock, subject to further due diligence, in an 80% stock and 20% cash transaction.

28.     On May 20, 2019, First Community, based upon feedback from its financial advisor Banks Street Partners' ("BSP") discussions with Stephens, submitted a revised indication of interest to Highlands that increased the value range to $8.75 to $9.35 per share of Highlands stock.

29.     On May 21, 2019, the Board met to discuss, among other things, the indications of interest it had received and other strategic alternatives potentially available to the Company. At this meeting, despite the fact that (i) Institution A's proposal had a higher per share value range than First Community's proposal, (ii) three unidentified Board members raised concerns about whether it was the right time to pursue a sale of the institution, particularly given the recent termination of the written agreement with the Federal Reserve and the pending search for a new CEO; (iii) members of the Board had concerns with respect to the impact on First Community's financial position as a result of the declining coal market; and (iv) three unidentified Board members preferred to wait and remain a stand-alone institution, the majority of the Board determined to move forward exclusively with First Community.

30.     Thereafter, on May 24, 2019, Highlands signed the indication of interest with First Community committing to a 60-day exclusivity period.

31.     On July 1, 2019, First Community submitted a proposed post-due diligence price of $9.00 per share of Highlands stock, assuming 100% stock consideration.

32.     On July 23, 2019, the Board met to vote on whether to enter into the merger agreement. The Board voted four-to-three in favor of the merger agreement with First Community.

The three Board members that did not vote in favor of the merger agreement and the merger raised the same concerns previously raised at the May 21, 2019 Board meeting with respect to Highlands remaining a stand-alone institution.

33.     On July 23, 2019, First Community informed Highlands that, as the Board's four-to-three vote did not meet First Community's condition requiring unanimous Board approval of the merger agreement, First Community would not move forward with the proposed merger.

34.     Between July 24, 2019 and July 30, 2019, the Chairman of the Board and other Board members in support of the merger agreement and merger reached out to the three Board members that voted against the merger in an attempt to address the concerns that had been expressed by the opposing Board members.  Despite these efforts, Highlands was unable to obtain increased Board support, and on July 30, 2019, First Community formally withdrew its offer, terminating the indication of interest.

35.     On August 14, 2019, BSP contacted Stephens to reengage negotiations.  BSP relayed that First Community would consider moving forward with increased, even if not unanimous, Board approval, reiterated the emphasis that First Community would place on its community involvement in the communities in which Highlands operates and offered to formalize its agreement to create an advisory board comprised of community members in the Abingdon, Virginia market.  First Community's proposal otherwise had not changed from the proposal adopted and approved by the Board on July 23, 2019.

36.     At an August 21, 2019 Board meeting, defendant Moser conducted an unofficial vote which indicated the Board unanimously supported the merger.

37.     On September 3, 2019, the Board met, Stephens delivered its fairness opinion and the Board adopted and approved the Merger Agreement.

38.    On September 11, 2019, Highlands and First Community issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

BLUEFIELD, Va., September 11, 2019 (GLOBE NEWSWIRE) – Bluefield, VA-based First Community Bankshares, Inc. ("First Community") (NASDAQ: FCBC), parent company of First Community Bank (which operates in Tennessee under the trade name People's Community Bank), and Abingdon, VA-based Highlands Bankshares, Inc. ("Highlands") (OTCQX: HLND), parent company of Highlands Union Bank, jointly announced today their entry into an agreement and plan of merger pursuant to which First Community will acquire Highlands and its wholly-owned bank subsidiary, Highlands Union Bank. As of June 30, 2019, Highlands Union Bank had total assets of approximately $612 million. Upon completion of the transaction, First Community is expected to have total consolidated assets in excess of $2.8 billion.

This combination will bring together two traditional southwestern Virginia community banks who serve the Highlands region in Virginia, North Carolina and Tennessee. "We are excited to join forces with the Highlands Union Bank team to continue to provide the highest level of service to our customers and the local communities we serve," said Gary Mills, President and CEO of First Community Bank. Mr. Mills continued, "We welcome Highlands' customers, employees and shareholders. We believe this highly strategic affiliation will mutually benefit our shareholders, customers and employees."

Bryan Booher, Interim CEO and President of Highlands, commented, "First Community will be an excellent partner when it comes to culture, commitment to customer satisfaction, and involvement in our local communities. Our customers will have access to a broader product offering and branch network while continuing to receive service that exceeds their expectations. Our employees will join a familiar culture and our shareholders will enjoy the benefits of being part of a high-performing $2.8 billion asset franchise."

"This natural partnership brings like-minded bankers and customers together to create an even stronger franchise to serve the people and communities of the tri-state Highlands region … both banks' stakeholders are an integral part of this area and share its values of hard-work and community involvement," said Will Stafford, Chairman and Chief Executive Officer of First Community.

The agreement and plan of merger provides for the merger of Highlands with and into First Community, with First Community as the surviving corporation. Under the terms of the agreement and plan of merger, each share of Highlands common and preferred stock outstanding immediately prior to the merger will be converted into the right to receive 0.2703 shares of First Community common stock, which equates to $8.80 per share of Highlands common stock and an aggregate transaction

value of approximately $91.0 million, based on First Community's recent 20-day average closing price.

First Community Bank and Highlands Union Bank have entered into a separate merger agreement providing for the merger of Highlands Union Bank with and into First Community Bank immediately following the merger of First Community and Highlands, with First Community Bank as the surviving bank.

The transaction, which received unanimous approval by both First Community's and Highland's Board of Directors, is subject to customary closing conditions, including the approval of Highlands' shareholders and the receipt of all required regulatory approvals. All members of the Highlands Board of Directors have entered into support agreements to vote their holdings in favor of the transaction. The transaction is expected to be consummated in the fourth quarter of 2019. At that time, a Highlands director will join the board of First Community Bank. First Community will also establish an Advisory Board to maintain a close connection with our customers in the Highlands Region. First Community expects the transaction to be neutral to tangible book value per share (non-GAAP) and to provide upper single digit accretion to earnings in the first year of the combination.

## Insiders' Interests in the Proposed Transaction

39.     Highlands insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Highlands.

40.     Notably, if they are terminated in connection with the Proposed Transaction, Highlands' named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC ($) | Perquisites/ Benefits ($) | Tax Reimbursements ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Bryan T. Booher | $ 150,000 | $ 114,817 | - | - | - | $ - | 264,817 |
| John H. Gray | $ 150,000 | $ 26,758 | - | - | - | $ - | 176,758 |
| Michael J. Hill | $ 205,000 | $ 17,570 | - | - | - | $ - | 222,570 |

## The Proxy Statement Contains Material Misstatements or Omissions

41.     The defendants caused to be filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Highlands' stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to

make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

42.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the Proposed Transaction; (ii) Highlands management's and First Community's financial projections, relied upon by the Company's financial advisor Stephens in its financial analyses; (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Stephens; and (iv) Stephens' and Company insiders' potential conflicts of interest.

***Material Omissions Concerning the Background of the Proposed Transaction***

43.     The Proxy Statement omits material information regarding the background of the Proposed Transaction.

44.     The Proxy Statement fails to disclose any details of the steps and process undertaken by Stephens to determine the value at which Highlands could either sell or raise capital for the purpose of pursuing mergers and acquisitions and other strategic investments and potentially provide liquidity to certain investors.

45.     Additionally, the Proxy Statement sets forth that "[o]n the evening of May 20, 2019, in an effort to eliminate other bidders from the process and avoid a second round of bids, First Community, based upon feedback from BSP's discussions with Stephens, submitted a revised indication of interest to Highlands that increased the value range to $8.75 to $9.35 per share of Highlands stock."  Proxy Statement at 44.  The Proxy Statement fails to disclose the specific feedback provided by Stephens to First Community's financial advisor BSP, based upon which First Community submitted a revised indication of interest.  The Proxy Statement further fails to disclose whether Stephens provided similar feedback to each of the other parties involved in the

sale process to put them on even footing with First Community, or provided the other bidders with any opportunity to submit a revised offer.

46.     Moreover, prior to entering into the indication of interest with First Community on May 24, 2019 and committing to a 60-day exclusivity period, the Board met on May 21, 2019 to evaluate the indications of interest the Company had received.  According to the Proxy Statement, "[t]hree [B]oard members raised concerns about whether it was the right time to pursue a sale of the institution, particularly given the recent termination of the written agreement with the Federal Reserve and the pending search for a new chief executive officer."  *Id.* at 45.  These three Board members thereafter voted against the merger, preferring to wait and remain a stand-alone institution.  The Proxy Statement fails to disclose the identities of these three Board members, and the specific concerns expressed by the individual Board members.

47.     Thereafter, at the July 23, 2019 Board meeting, these same three Board members declined to vote in favor of the merger agreement and the merger with First Community and raised the same concerns previously raised at the May 21, 2019 Board meeting with respect to Highlands entering into a merger with First Community rather than remaining a stand-alone institution.  The Proxy Statement fails to disclose the identities of these three Board members, and the specific concerns expressed by the individual Board members.

48.     Following First Community's refusal to proceed without unanimous Board approval, between July 24 and July 30 "the Chairman of Highlands and other board members in support of the merger agreement and merger [ ] reached out to the board members that voted against the merger in an attempt to address the concerns that had been expressed by the opposing board members."  *Id.* at 46.  The Proxy Statement fails, however, to disclose any details regarding how defendant Moser and the remaining Board members in favor of the deal attempted to address

the concerns held by the three opposing Board members.

49.     Furthermore, the Proxy Statement sets forth that in connection with the sale process "12 parties executed nondisclosure agreements" with the Company. *Id.* at 44. Critically, the Proxy Statement fails to expressly indicate whether the nondisclosure agreements entered into with these twelve parties contain "don't-ask, don't-waive" standstill provisions that are presently precluding these parties from submitting a topping bid for the Company.

50.     The disclosure of the terms of these non-disclosure agreements is crucial to Highlands stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

51.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Highlands' and First Community's Financial Projections***

52.     The Proxy Statement omits material information regarding the Company's and First Community's financial projections provided by Highlands' management and First Community's management, respectively, and relied upon by Stephens for its analyses.

53.     For example, in connection with Stephens' *Discounted Cash Flow Analysis* ("DCF"), the Proxy Statement sets forth:

> Stephens performed a discounted cash flow analysis to estimate a valuation range for Highlands stock. In this analysis, Stephens used financial forecasts and projections relating to the earnings and assets for Highlands prepared, and provided to Stephens, by Highlands' management, and assumed discount rates ranging from 10.3% to 16.3%. The range of values was derived by adding (i) the present value of the estimated free cash flows that Highlands could generate over the period from June 30, 2019 to December 31, 2024 as a standalone company, and (ii) the present value of Highlands implied terminal value at the end of such period.

*Id.* at 57. The Proxy Statement, however, fails to disclose the estimated free cash flows that

Highlands could generate over the period from June 30, 2019 to December 31, 2024 as a standalone company as well as the underlying line items.

54.     Additionally, in connection with Stephens' review of the proposed merger and the preparation of its fairness opinion, Stephens "analyzed, on a pro forma basis, in reliance upon financial projections and other information concerning Highlands and First Community prepared by and assumptions provided by the managements of Highlands and First Community, the effect of the merger on the balance sheet, capitalization ratios, earnings and tangible book value both in the aggregate and, where applicable, on a per share basis of First Community." *Id*. at 53.  The Proxy Statement fails, however, to disclose the financial projections and assumptions provided by First Community's management.

55.     The omission of this information renders the statements in the "Certain First Community and Highlands Unaudited Prospective Financial Information" and "Opinion of Highlands' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Stephens' Financial Analyses***

56.     The Proxy Statement describes Stephens' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Stephens' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Highlands' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Stephens' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

57.     With respect to Stephens' *DCF*, the Proxy Statement fails to disclose: (i) the

estimated free cash flows that Highlands could generate over the period from June 30, 2019 to December 31, 2024 as a standalone company; (ii) the implied terminal value of the Company; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 10.3% to 16.3%.

58.     With respect to Stephens' *Pro Forma Financial Impact Analysis*, the Proxy Statement fails to disclose: (i) quantification of the accretion to First Community's estimated EPS for 2020 through 2024, Highlands estimated EPS for 2020 and 2021 and to First Community's estimated tangible book value per share; (ii) First Community's estimated earnings per share for 2020 through 2024; (iii) the years the analysis indicated accretion to First Community's estimated tangible book value per share; and (iv) quantification of First Community's estimated tangible book value per share for the years indicated.

59.     With respect to Stephens' *Selected Public Companies Analysis* and *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by Stephens, respectively.

60.     The omission of this information renders the statements in the "Opinion of Highlands' Financial Advisor" and "Certain First Community and Highlands Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Stephens' and Company Insiders' Potential Conflicts of Interest***

61.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Stephens.

62.     The Proxy Statement sets forth:

Highlands has agreed to pay Stephens a fee for advisory services in connection with

the merger in an amount equal to the greater of (i) $750,000 or (ii) 1.35% of the transaction value of the merger consideration, which based on the First Community's closing price of $34.00 on September 12, 2019 would be approximately $1,285,000. A substantial portion of this fee is contingent upon the closing of the transaction. For services rendered in connection with the delivery of its opinion, Highlands paid Stephens a fee of $150,000 upon delivery of its opinion. Highlands has also agreed to reimburse Stephens for its expenses incurred in connection with its services, including the fees and expenses of its counsel, and will indemnify Stephens against certain liabilities arising out of its engagement, including potential liabilities that could arise in connection with its opinion. During the past two years, Highlands has paid Stephens $375,000 in fees (which includes the fee for the fairness opinion) for the financial advisory services provided in connection with this merger. This amount will be credited against the contingent portion of the fee to be paid to Stephens at the closing of the merger.

*Id*. at 58.   The Proxy Statement fails, however to disclose the portion of Stephens' fee that is contingent upon consummation of the Proposed Transaction.  Additionally, the Proxy Statement fails to disclose any previous services Stephens performed for First Community and the fees received for such services.

63.     Additionally, the Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Highlands insiders.

64.     For example, the Proxy Statement sets forth:

In connection with the merger, First Community Bank has made an offer to Bryan T. Booher to serve as the Vice President of Credit Administration of First Community Bank following consummation of the merger. Mr. Booher will be paid annual compensation of $155,000 and will be provided a signing bonus in the form of First Community common stock valued at $75,000 as of the date of Mr. Booher's hire. The stock bonus will vest over a period of three years, beginning on the first anniversary of Mr. Booher's date of hire and will be contingent on Mr. Booher's continued employment with First Community Bank..

*Id.* at 62.

65.     Additionally, the Proxy Statement sets forth:

Under the merger agreement, First Community has agreed, prior to the closing date, to appoint one member of the current board of directors of Highlands, selected by First Community in consultation with Highlands (which we refer to as the "Highlands Designee"), to the board of directors of First Community Bank. The

directors of First Community holding office immediately prior to the effective time, will serve as the directors of the surviving corporation from and after the effective time of the merger and will hold office until their respective successors are duly elected and qualified, or their earlier death, resignation or removal.  Additionally, First Community shall consult with Highlands board of directors to form an advisory board of community members in the Abingdon, Virginia market.

*Id*. at 68.

66.    Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between First Community and Highlands Board members and executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of First Community's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

67.    Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68.    The omission of this information renders the statements in the "Background of the Merger," "Opinion of Highlands Financial Advisor" and "Interests of Highlands Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

69.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Highlands stockholders

will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

70.     Plaintiff repeats all previous allegations as if set forth in full.

71.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

72.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the background of the Proposed Transaction, the Company's and First Community's financial projections, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by the Company's financial advisor and Company insiders.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

73.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

74.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

75.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

<u>**COUNT II**</u>

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

76.     Plaintiff repeats all previous allegations as if set forth in full.

77.     The Individual Defendants acted as controlling persons of Highlands within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Highlands, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

80.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

81.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Highlands' stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Highlands, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Highlands stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 27, 2019

**WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*